UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Mark D. Montgomery,
    Debtor.                                        No. 13 - 05-10930 - SL

**MEMORANDUM OPINION IN SUPPORT OF
ORDER CONFIRMING CHAPTER 13 PLAN**

The chapter 13 plan ("Plan") (doc 32) has come before the Court for confirmation. Having considered the evidence and the file, the Court finds good cause to confirm the Plan.[1]

**Background**

On September 15, 2000, Mark Montgomery ("Debtor") filed a chapter 13 case (No. 13-00-14950 ML, District of New Mexico). Debtor confirmed a plan and an amended plan in that case and made total payments of $6,569.93, of which $5,369.44 was paid to Vanessa and Ronald Henderson ("Hendersons") (doc 128; Henderson exhibit 8). However, due to lack of work and injury, Debtor was unable to continue making the payments, and so the case was dismissed on November 19, 2004 (doc 125).

On February 10, 2005, Debtor filed this chapter 7 bankruptcy case. Hendersons filed a motion to dismiss the case (doc 7), which was denied (doc 22), and then a non-dischargeability

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J); and these are findings of fact and conclusions of law as required by Rule 7052 F.R.B.P. The underlying chapter 13 case was filed prior to the effective date of the analogous provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 23, and therefore the changes enacted by that legislation are not applicable to this case.

adversary proceeding (No. 05-1094). Debtor converted the case to one under chapter 13 (motion doc 27, order doc 30), and then the Plan, which includes motions to avoid the Hendersons' lien (doc 34) and to assume the contract to purchase a 2003 Peterbilt tractor which the Debtor uses to earn his living (doc 35). Both the Hendersons and the Trustee filed objections to the Plan.[2] (Docs 40 and 45 respectively.) The Hendersons also filed a motion to dismiss the case for failure to file a plan timely (doc 41), which the Court granted (doc 58). Debtor then filed a motion to reconsider the dismissal (doc 60), which the Court granted (docs 64 and 65). Subsequently the Court conducted the final hearing on the confirmation of the plan on August 23, 2006 (minutes – doc 74).[3]

---

[2] By the time the deadline for objecting to the Plan arrived, the Hendersons had filed their own chapter 7 case (No. 7-05-21369 ML, District of New Mexico). They nevertheless filed the objection, stating explicitly that they were doing so to preserve their chapter 7 trustee's rights. Their chapter 7 trustee never adopted the objection; however, the Court has treated the Hendersons objections as if their chapter 7 trustee had adopted the objections and then abandoned them, as he did for the proof of claim they filed.

[3] Debtor filed a post-trial motion requesting the Court to take judicial notice of Schedule A from the Hendersons' own bankruptcy case (No. 7-05-21369 ML) (doc 75), which motion the Hendersons opposed (doc 77) and concerning which the Court conducted a preliminary hearing (minutes – doc 80). Because the Court can and does decide the confirmation issues without reference to the information from the Henderson case, the Court denies the motion without prejudice.

The dispute which led to the filing of both cases had its origin in some construction work that Debtor did (and did not do) for the Hendersons on their house.  He was not licensed by the State of New Mexico as a contractor, and ultimately pled guilty to a criminal charge for that and paid a fine.  On February 28, 2000, the Hendersons obtained a judgment against Debtor from the 12th Judicial District Court for a total of $17,290.05.[4]  Throughout these two cases Debtor has sought to escape the full effects of that judgment, and the Hendersons have just as doggedly pursued him.

**Analysis**

The Plan provides for 36 monthly payments of $100 each.  The incorporated motions also seek to assume the lease/contract with Wild West Express, Inc. for the 2003 Peterbilt tractor[5] and to void the Henderson's judicial lien as impairing Debtor's exemptions.  The only proof of claim on file is the Hendersons'[6],

---

[4] The judgment included an award of $5,907.72 for attorney fees to the Hendersons (in addition to a separate figure for costs), even though the judgment recites that both sides "appeared pro se".  Henderson exhibit 8.

[5] No party opposes the assumption of the lease/contract, and so that motion is approved.

[6] The Hendersons timely filed a proof of claim when the case first began.  After they filed their own chapter 7 case, their case trustee entered his appearance in this case and asserted ownership of the claim.  Docs 49 and 50.  Subsequently he abandoned the claim.  Doc 66.  The claim has therefore reverted to the Hendersons, and they continue to have standing to pursue
(continued...)

in the amount of $24,495.84 as of March 22, 2005, the date the Hendersons filed the claim.[7]

Debtor's amended schedule A lists the home valued at $19,000 and an unattached lot worth $200. The Court accepts the value of $19,000 as the value of the house. Schedule B shows $5,500 of personal property. Schedule C, using the federal exemptions, claims exempt $18,450 of the home and virtually all the personal property. Doc. 37. Schedule D shows that the home is owned free and clear (doc 38) but an earlier Schedule D showed a mortgage debt of $1,100 (doc 16) as of the petition date. Henderson exhibits 12 and 13 shows the mortgage debt was paid off on or before August 12, 2005. Debtor's amended Schedule I (doc 18) shows income of $3,200 and amended Schedule J (doc 37) shows expenses of $3,098, for a surplus of $102. Debtor's plan proposes paying $100 per month.

Confirmation of a Chapter 13 plan is governed by Section 1325[8]. Subsection (a) mandates plan confirmation if six

---

[6](...continued)
their objections to confirmation.

[7] Amended Schedule F (doc 38) shows only three creditors: $13,000 owed to the Hendersons, $4,000 to Wild West #27, LLC, and $1,100 owed to Alamogordo Otho [sic] and Sports Medicine, presumably for the back injury that Debtor has suffered. Doc 39.

[8]Section 1325 provides, in part:
(a) Except as provided in subsection (b), the court shall confirm a plan if--
(1) the plan complies with the provisions of this
(continued...)

[8](...continued)
chapter and with the other applicable provisions of
this title;
(2) any fee, charge, or amount required under chapter
123 of title 28, or by the plan, to be paid before
confirmation, has been paid;
(3) the plan has been proposed in good faith and not by
any means forbidden by law;
(4) the value, as of the effective date of the plan, of
property to be distributed under the plan on account of
each allowed unsecured claim is not less than the
amount that would be paid on such claim if the estate
of the debtor were liquidated under chapter 7 of this
title on such date;
(5) with respect to each allowed secured claim provided
for by the plan--
    (A) the holder of such claim has accepted the
    plan;
    (B)(i) the plan provides that the holder of such
    claim retain the lien securing such claim; and
    (ii) the value, as of the effective date of the
    plan, of property to be distributed under the plan
    on account of such claim is not less than the
    allowed amount of such claim; or
    (C) the debtor surrenders the property securing
    such claim to such holder; and
(6) the debtor will be able to make all payments under
the plan and to comply with the plan.

(b)(1) If the trustee or the holder of an allowed
unsecured claim objects to the confirmation of the
plan, then the court may not approve the plan unless,
as of the effective date of the plan--
    (A) the value of the property to be distributed
    under the plan on account of such claim is not
    less than the amount of such claim; or
    (B) the plan provides that all of the debtor's
    projected disposable income to be received in the
    three-year period beginning on the date that the
    first payment is due under the plan will be
    applied to make payments under the plan.
(2) For purposes of this subsection, "disposable
income" means income which is received by the debtor
and which is not reasonably necessary to be expended--
    (A) for the maintenance or support of the debtor
(continued...)

Case 05-10930-s13    Doc 82    Filed 03/26/07    Entered 03/26/07 15:13:52 Page 5 of 16

specified requirements are met. <u>Petro v. Mishler (In re Petro)</u>, 276 F.3d 375, 378 (7th Cir. 2002). Subsection (b) comes into play when a trustee or holder of an allowed unsecured claim objects to confirmation. At issue in this case are disposable income (§ 1325(b)), the best interest of creditors test (§ 1325(a)(4)), feasibility (§ 1325(a)(6)), and good faith (§ 1325(a)(3)).

A.  <u>Disposable income</u>

Both the Trustee and Hendersons objected to confirmation, triggering the disposable income requirements of § 1325(b). The Plan does not propose to pay 100% of the claims. <u>See</u> § 1325(b)(1)(A). Therefore the Court cannot confirm unless the Plan provides that all of the Debtors' projected disposable income to be received in the three-year period beginning on the date of the first plan payment will be applied to make payments under the Plan. § 1325(b)(1)(B). The Court has reviewed the Debtors' budget and finds it reasonable. Because Debtor's

---

[8](...continued)
> or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Page 6 of 16

Case 05-10930-s13   Doc 82   Filed 03/26/07   Entered 03/26/07 15:13:52 Page 6 of 16

monthly surplus is $102, practically speaking Debtor has met the disposable income test of § 1325(b)(1)(B).

B. <u>Best interest of creditors test</u>

Section 1325(a)(4), referred to as the "best interest of creditors test" assures that creditors will be paid, at a minimum, the amount which they would be paid if the case were a chapter 7 liquidation case.

In order to determine compliance with the best interest of creditors test:

> a hypothetical liquidation of the debtor's estate under Chapter 7 on the "effective date of the plan" must be compared to the value on "the effective date of the plan" of what the debtor proposes to distribute to the holders of allowed unsecured claims. A mathematical calculation must be made of the value of what would be available for distribution to unsecured claim holders in a Chapter 7 case. The debtor's proposed distributions to unsecured claim holders must be "present valued" (discounted) as of the effective date of the Chapter 13 plan.

Keith M. Lundin, Chapter 13 Bankruptcy § 5.25 (1990).

<u>In re Coonrod</u>, 135 B.R. 375, 377 (Bankr. D. Neb. 1991).[9]

---

[9] The parties did not address what was the "effective date of the plan", a term undefined by the Code. See <u>Forbes v. Forbes (In re Forbes)</u>, 215 B.R. 183, 189 (8th Cir. BAP 1997). Compare Keith M. Lundin, Chapter 13 Bankruptcy, 3$^d$ Ed. § 160.1 (2000 & Supp. 2004)(hereafter <u>Lundin</u>)("Without directly deciding the question, most best-interests-of-creditors test cases perform the hypothetical liquidation as of the date of the Chapter 13 petition.") <u>with, e.g.</u>, <u>Education Assistance Corp. V. Zellner (In re Zellner)</u>, 827 F.2d 1222, 1225 (8th Cir.. 1987)("Of course, the effective date of the plan cannot be antecedent to the confirmation hearing at which the issues raised by section 1325(a)(4) are to be heard by the court.")(Citation omitted.); <u>In</u>
(continued...)

Virtually all the property in this small estate is exempt. The exception is the nonresidential lot. But because it is encumbered by the Hendersons' transcript of judgment (Henderson exhibit 8, page 3), the value of that lot, whatever it is, does not figure into the best interests of creditors test.[10] The value of whatever little equity there may be in the estate must be discounted to take into account hypothetical chapter 7 administrative fees. See Jensen v. Dunivent (In re Dewey), 237 B.R. 783, 788 (10th Cir. BAP 1999) (calculation of chapter 7 liquidation value of debtor's estate must take into account chapter 7 administrative expenses); In re Delbrugge, 347 B.R. 536, 539 (B.N.D.W.Va 2006) (chapter 7 administrative costs include chapter 7 trustee fees, costs of sale, exemptions and capital gains taxes); In re Gatton, 197 B.R. 331, 332 (B.D. Colo.

---

[9](...continued)
re Musil, 99 B.R. 448, 451 (Bankr. D. Kan. 1988)("[T]he effective date can be no earlier than the date the first confirmable plan is heard."). Instead the parties implicitly treated the date of the filing of the petition as the effective date of the Plan. For that reason the Court will do the same. However, as explained below, even if the effective date is the date of confirmation of the plan, Debtor has still met the best interests of creditors test.

[10] The upshot of this ruling is that the Debtor is not required to do anything with the lot. And the Hendersons in turn will be entitled to enforce their transcript of judgment. (The Court notes that ¶11 of the Plan revests the property in the Debtor upon confirmation.) This addresses the objection that the Plan does not address secured claims.

1996) (same). Unquestionably the Plan meets the best interest of creditors test.

C.  Feasibility

The Court reviewed the budget in this case and finds that it is reasonable. Debtor had been as of the confirmation hearing constantly working for 2 1/2 years as a driver for the limited liability company in which he is attempting to obtain an ownership interest (Wild West #27, LLC, hereinafter "LLC"). He appears to be in good enough health to continue that work through the conclusion of the Plan. There is no reason to assume that he will not be able to continue to make plan payments of $100, and the Trustee's Interim Report, filed in November 2006 (doc 81), which showed that Debtor was current on his payments, confirms this.

D.  Good Faith

>   As a general matter, a determination of good faith must
>   be made on a case by case basis, looking at the
>   totality of the circumstances. See Pioneer Bank v.
>   Rasmussen (In re Rasmussen), 888 F.2d 703, 704 (10th
>   Cir. 1989). "In evaluating whether a debtor has filed
>   in good faith, courts should be guided by the eleven
>   factors set forth in Flygare v. Boulden, 709 F.2d 1344,
>   1347-48 (10th Cir.1983), as well as any other relevant
>   circumstances."  Robinson v. Tenantry (In re Robinson),
>   987 F.2d 665, 668 (10th Cir. 1993) (footnote omitted).
>   The eleven Flygare factors are:
>       (1) the amount of proposed payments and the
>       amount of the debtor's surplus;  (2) the
>       debtor's employment history, ability to earn
>       and likelihood of future increases in income;
>       (3) the probable or expected duration of the
>       plan;  (4) the accuracy of the plan's

> statements of the debts, expenses and
> percentage repayment of unsecured debt and
> whether any inaccuracies are an attempt to
> mislead the court; (5) the extent of
> preferential treatment between classes of
> creditors; (6) the extent to which secured
> claims are modified; (7) the type of debt
> sought to be discharged and whether any such
> debt is non-dischargeable in Chapter 7; (8)
> the existence of special circumstances such
> as inordinate medical expenses; (9) the
> frequency with which the debtor has sought
> relief under the Bankruptcy Reform Act; (10)
> the motivation and sincerity of the debtor in
> seeking Chapter 13 relief; and (11) the
> burden which the plan's administration would
> place upon the trustee.
>
> <u>Flygare</u>, 709 F.2d at 1347-48 (<u>quoting</u> <u>In re Estus</u>, 695
> F.2d 311, 317 (8th Cir. 1982)). But "the weight given
> each factor will necessarily vary with the facts and
> circumstances of each case." <u>Id.</u> at 1348.

<u>Mason v. Young (In re Young)</u>, 237 F.3d 1168, 1174-75 (10th Cir. 2001). And, "a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." <u>Id.</u> at 1177 (<u>quoting</u> <u>Neufeld v. Freeman</u>, 794 F.2d 149, 153 (4th Cir. 1986)).

The genesis of the conflict between the two sides was a series of repair/remodel jobs that Debtor did for the Hendersons on their home. <u>See</u> Henderson exhibit 15 ("Work for Hire Agreement"). Although clearly Debtor did not have a contractor's license, it is also clear that Debtor had no intention of cheating the Hendersons. In fact, the testimony of the parties leads the Court to conclude that Debtor sought to do only one

Page 10 of 16

Case 05-10930-s13   Doc 82   Filed 03/26/07   Entered 03/26/07 15:13:52 Page 10 of 16

project initially out of the several jobs the parties negotiated, to ensure that the work went well enough before embarking on each next project. Mr. Henderson, apparently sensing that Debtor had considerably underpriced his estimates for all the jobs, persuaded Debtor to agree to do all the jobs, likely with the idea of locking in the low prices for the work. The Court does not find that Debtor engaged in any egregious behavior in connection with the repair/remodel work.[11]

The Court will now analyze each Flygare factor:

1) Debtor is paying $100 per month, which is almost exactly the amount of the Debtor's surplus.
2) Debtor has a stable enough employment history. Debtor testified he might receive a raise of an additional penny per mile from the LLC.
3) The Plan duration is three years, which is one form of the disposable income/best efforts test specified by § 1325(b)(1)(B).
4) The Plan's statements were accurate; there was no attempt to mislead the Court.
5) There is no preferential treatment of any class of creditors except as authorized by the Code (e.g., attorney fees).

---

[11] Ms. Henderson also testified that Debtor had made racist statements in the course of an argument between the parties. Debtor denied the allegation. The Court need not decide that issue since that was not a basis for objecting to the Plan.

Case 05-10930-s13    Doc 82    Filed 03/26/07    Entered 03/26/07 15:13:52 Page 11 of 16

6) Secured claims are not modified. In fact, the Plan has no provision for payment of secured claims. However, the Hendersons' judicial lien is avoided, but only on the homestead (see below).

7) The unsecured debt is minimal. Aside from the executory contract debt which the Debtor is assuming for the Peterbilt ($80,000) and the 41.100 bill to Alamogordo Ortho and Sports Clinic, the Hendersons' judgment is the total debt. The debt to the Hendersons might will be nondischargeable in a chapter 7 case, but since chapter 13 was written to permit the discharge of otherwise nondischargeable debt, it is not bad faith <u>per se</u> to use the Bankruptcy Code to do so. <u>In re Schaitz</u>, 913 F.2d 452, 454 (7th Cir. 1990); <u>In re Wilcox</u>, 251 B.R. 59, 67 (Bankr. E.D. Ark. 2000).

8) There are no exigent circumstances.

9) Debtor has filed one other bankruptcy. This was discussed above.

10) The Court finds that the Debtors' motivation in filing this case was to deal with the Hendersons' collection efforts, which is one of the purposes of filing a bankruptcy petition.

11) There would be and apparently has been no burden on the Trustee to administer this case beyond the resources required to administer any other case.

None of the foregoing factors indicate bad faith on the part of the Debtor; in the balancing process between good and bad faith, the factors all are either neutral or indicate good faith. In sum, the Court finds that overall the Plan was proposed in good faith.

E.  Other Issues and Further Discussion

The Court finds that Debtor's employment and "ownership" arrangement with Wild West Express, Inc. ("Express"), manifested in the LLC operating agreement (Henderson exhibit 2), provides Debtor with all the detriments and virtually none of the benefits of an independent contractor status. Express completely controls the LLC. Essentially Debtor pays for all the costs of the operation and realizes little or no gain. And his chances of ever actually accumulating any significant value in the Peterbilt or the LLC, even spending almost every day of the month on the road, appear to be minimal. Debtor's interest in the LLC is practically speaking nominal, so that any payments he makes to the LLC essentially benefit Express, in which he has no ownership interest.

The Court also finds that the home had on the petition date a gross value of, at most, $19,000, encumbered by a mortgage securing a debt of $1,100 owed to New Tex (amended Schedule A - doc 18; amended Schedule D - doc 16). The Debtor's equity was completely exempted. Even taking into account the payoff of the

mortgage during the case (and prior to the confirmation hearing)[12], if the transaction cost of liquidating the home is taken into account (approximately 8%), the value of the home is less than the claimed exemption.

Since any equity that the Debtor has in the homestead is exempt[13], the Hendersons' judicial lien on the homestead property must be avoided.[14] § 522(f). On the other hand, the lot, whatever its value, is no longer claimed as exempt, and the Hendersons' judicial lien cannot be avoided on that property. A consequence of this ruling is that the value of the lot, which the Hendersons have valued at no more than $7,500 to $11,000 gross (Henderson exhibit 6) and Debtor at $200 (Debtor exhibit A

---

[12] Debtor completed his payments on the mortgage note during the case and New Tex released the mortgage lien.

[13] The state court ruling, that Debtor had forfeited the right to claim the New Mexico homestead exemption, was cited by Judge McFeeley in ruling in the Debtor's first case that Debtor was not entitled to claim the New Mexico homestead exemption (No. 13-00-14950, doc 48). Subsequently in that first case Debtor amended to claim the federal exemption, and that exemption was permitted and the Hendersons' judicial lien set aside as part of confirmation. Memorandum Opinion and Order confirming Debtor's amended chapter 13 plan (docs 85, 90 and 91). Debtor has continued to claim the federal exemptions in the instant case. The Court finds that the exemptions as claimed by the Debtor in his amended Schedule C (doc 37) are all allowable.

[14] This ruling does not apply to the Hendersons' Lienholders' Statement of Priority Claim (Henderson exhibit 10), apparently recorded with the office of the Otero county clerk on November 3, 2000. While it appears that the document was recorded while Debtor was in his first chapter 13 case and therefore is likely void, Debtor has not specifically moved to avoid this lien and so the Court does not rule on it.

and amended Schedule A – doc 18) is removed from the calculation of property available for distribution to unsecured creditors.

During the hearing Debtor's counsel announced that, in aid of confirmation, counsel would not charge more than $1,500 for his services. Since the amended 2016 statement shows that he had already received $1,000, he needs to be paid only an additional $500, plus costs and applicable New Mexico gross receipts tax on the entire amount.[15] With the trustee's commission of $360 deducted, the Hendersons should receive about $2,700, more than the value of the nonexempt chapter 7 estate property were it liquidated and the proceeds distributed on the effective date of the Plan.[16]

Debtor is not a serial bankruptcy filer. The reason for the failure of the first chapter 13 case, which failure triggered the

---

[15] Counsel's fees for representing Debtor throughout the plan confirmation process almost certainly would have consumed the entirety of whatever payments did not go to the Trustee for her commissions. In consequence counsel's giving up the additional fees is the factor that permits the Plan to more than meet the best interests of creditors test. The Court notes, however, that debtor's counsel are ordinarily entitled to full payment of the fees they have earned, even if that means little or no payment to unsecured creditors. And this is the case even if the fees are incurred in a hotly contested confirmation or other type of hearing. Thus the Trustee's comment that confirmation of the Plan would result in payment only to the Trustee and counsel does not by itself state a valid objection to confirmation.

[16] Counsel's reduction of his fees means Debtor meets the best interests of creditors test even with the $1,100 mortgage debt paid off and if the effective date of the plan is at confirmation.

Case 05-10930-s13    Doc 82    Filed 03/26/07    Entered 03/26/07 15:13:52 Page 15 of 16

need for the second filing, was lack of funds to make the payments. Debtor made his best effort but failed through no fault of his own. There was no bad faith in that failure.

**Conclusion**

The Court finds that the Plan has been filed in good faith and is confirmable. The Court will therefore enter an order confirming the Plan and denying the objections, granting and denying Debtor's motion to void the Hendersons' judicial lien in that the lien is voided as to the homestead but not as to the empty lot, and granting the motion to assume the contract to purchase the Peterbilt. Orders consistent with this memorandum opinion will enter.

_____
James S. Starzynski
United States Bankruptcy Judge

Copy to:

Ronald E Holmes
112 Edith Blvd NE
Albuquerque, NM 87102-3524

R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479

Kieran F. Ryan
PO Box 26
Las Cruces, NM 88004

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608